To hold this law valid in so far as it prohibits sales of whiskey and beer in Mt. Pleasant township, and invalid as to the sale of wines, might produce two effects. Either the result might be to subject domestic wines to the prohibition equally with all others or else to remove any restriction upon the sale of foreign wines except such as may apply equally to those of home production. 2 S. E. Rep., 645; 25 Fed. Rep., 865.

Without expressing any opinion as to the validity of the proviso clause in said act, it is sufficient to hold all the other provisions of said act a lawful exercise of the police power, and therefore not in conflict with the constitution and laws of the United States in relation to interstate commerce; and as the defendant admits that he sold intoxicating liquors, to-wit: he sold beer in said township, as alleged in the indictment, I find that he is guilty as therein charged.

A. C. Lewis, Prosecuting Attorney for State.

Howard & Handlan of Wheeling, W. Va., and John M. Cook of Steubenville, for Defendant.

---

(Cuyahoga Co., Court of Common Pleas.)

WERNER NEUHS v. THE GRASSELLI CHEMICAL CO.

---

MALCHUS v. THE GRASSELLI CHEMICAL CO.

---

1. In determining whether a lawful business shall be enjoined, all the surrounding circumstances will be considered by a court of equity, and evidence of value of plant, the number of men employed, that the works are located in a manufacturing district, the influence of other factories upon the atmosphere and property, and like considerations are properly admitted.

2. Even though nominal damages may be awarded, yet the granting of an injunction rests in the sound discretion of the court, and when the legal right is not clear or the injury doubtful or contingent, equity will not interfere.

3. The law does not regard every trifling injury or noise an actionable nuisance, and, though a strict legal right may be invaded, injunction does not, as a matter of right, follow such an invasion.

4. One is not under a legal duty to consult the tastes and preferences of his neighbor in the use of his property, and persons living in a great city, seeing fit to locate and live in manufacturing districts, must necessarily submit to annoyances which are incidental to city life in such districts.

5. Manfuacturing establishments are necessary and indispensable to the growth and prosperity of every city, and while the cleanliness and duty of the city may be marred by a factory, and the comfort of life to some extent interfered with, individual comforts must yield to public good.

6. In an action for damages by a life-tenant in possession, growing out of a nuisance, it is not proper to join as plaintiff the remaindermen. There can be no joint recovery therefor where the property itself is not injured.

---

ONG, J.

During the September term of 1895, the case of Werner Neuhs v. The Grasselli Chemical Company, the case of Matilda Malchus v. The Grasselli Chemical Company, and the case of Matthias Malchus v. The Grasselli Chemical Company, came on for hearing before this branch of the court then presiding in court room No. 6, upon the statement of the issues and the relief sought by the plaintiffs.

All three cases were at that time by the court referred to Honorable James Lawrence as referee, to hear the testimony, and report his finding of fact and law to this court.

The referee has made his report in conformity to the journal entry referring the same to him, and his report is now before the court on motion of defendant to have the same confirmed.

To his report, however, the three plaintiffs, after motion for a new trial was by the referee overruled and exceptions duly noted, have taken and filed thirty odd exceptions.

The cases involve much property and many intricate legal questions.

On the one hand, it involves not so much property in value to the plaintiffs and yet substantially all they have, which is to them as great an amount and more in that sense than the property of the defendant involved, which is their entire plant or the plant of The Grasselli Chemical Company, amounting to something like $750,000 in value.

The cases have been very thoroughly tried and hotly contended by all the contending parties, so much so that the referee has heard and reported to this court some 4,600 pages of testimony, and, in addition to the testimony thus taken, considered and repored to the referee, I am advised that he spent considerable time in viewing the premises, going

through all the departments and getting such information as was available and valuable to him in making his report to the court.

The issues involved were simply as to whether or not the business carried on and conducted by the defendant company was in fact a nuisance; it being claimed by the plaintiffs that the defendants manufacture gases such as ammonia, nitric acid, sulphuric acid and muriatic acid gas which, by reason of the breaking of vessels containing the same, and from other causes, escaped into the air, and by reason thereof are injurious to the health and to the property, and is a public nuisance.

On the other hand, it was contended by the defendant company, that while they did manufacture the gases referred to, and some others, yet the gases do not escape in such quantity as to be either injurious to health or to property surrounding or in the vicinity of their works; and they contend that with the improved methods, all of which they have adopted at a great expense, that within the last four years there have been practically no escaping gases at all such as is alleged and claimed by the plaintiffs in this case.

I am not disposed to commend the referee very highly for hearing so much testimony, and I regret that his patience did not exhaust long before it did in the hearing of this matter, but I need only to give the name of Mr. Lawrence as a referee, to show, and especially to the bar and bench who know him well, that he greatest of care was exercised by him in the hearing of the case, and that a fearless, honest finding was made by him from the testimony and law in the case.

The court sat very patiently for two and one-half days and heard the arguments of counsel for and against this report; and while, as I have said, the case has been hotly contented and ably handled on both sides, I want to and do say that counsel representing plaintiffs in this case, has evidently given to the case untiring and unceasing efforts. Indeed, I have never had, since I have been on the bench, a case presented more thoroughly than this case has been, by counsel on both sides. But neither counsel nor parties would expect the court in reviewing the report of the referee and passing upon the exceptions filed and errors assigned, to read this entire record. Yet, I have not only taken the time, but have performed the work of going through the record to such an extent as to be entirely familiar with the facts and the body of the testimony, and did myself go to the works, look them all over from beginning to end, in order that I might review the testimony and the finding of the referee with a better and clearer understanding of the case.

The motion is made to confirm the report by the defendant; and while the report involved three small judgments against the defendant, no exception is taken by the defendant to the judgments, but the defendant is in court insisting that the entire report be confirmed as made by the referee.

The plaintiffs' contention is that the referee erred in admitting certain testimony and in his holding as to the proper parties to one of the actions, together with error in his finding consisting, as I have said, of some thirty different exceptions, and it can not now be expected that the court will give at length its reasons for the sustaining or overruling of the exceptions.

The first exception is to the sixth finding of fact contained in the report—and the exception is to the finding in the report in which this language is used by the referee, to-wit: "In the business carried on upon said premises the defendant now employs about 350 men, including its office force and salesmen, with a monthly payroll exceeding $14,000, and the value of its plant is about $750,000."

The plaintiff excepted to the above finding, for the reason that such finding is immaterial, irrelevant and incompetent in the determination of the case.

The exception to the report in that regard is overruled.

For the same reason the second exception to the 7th finding of fact is substantially the same, and for the same reason is overruled.

The third exception is to the 8th finding of fact, in which finding the referee used the following language: "The part of the city of Cleveland in which the defendant's works are located is largely a manufacturing district." The plaintiffs except to the language used and to the finding, because they say it is immaterial and irrelevant and incompetent; and also for the reason that there is no evidence in the case supporting such finding, and the same is not sustained by the evidence.

There is no question as I shall make reference later on, to the proposition, as a matter of law. The testimony would be entirely competent to show such a state of facts. And, again, upon an examination of the record, there is no doubt in the mind of the court but that there is sufficient evidence to sustain the finding; and I think the finding, instead of being immaterial and irrelevant, is material and relevant, and especially so in view of the finding that the referee finally made in the cause.

The third exception is therefore overruled.

The fourth exception is to the 8th finding of fact. The referee used the following language: "I find, however, that independently of the escape into the air of gases from the defendant's works as hereinafter found, the emission of

such coal smoke renders the premises described in the petition, undesirable for residence purposes, and that such smoke injuriously affects the growth of vegetation in that vicinity."

Again, we see nothing improper or erroneous in the finding of the referee. It was clearly the right of the defendant to show, if it could, that the complaint made by the plaintiffs was attributable to another and different cause than that ascribed to it in the petition of plaintiffs and for which they seek the relief prayed for.

The exception is overruled in that respect.

The fifth exception is to the 9th finding of fact. The referee used the following language and made it a finding of fact, to-wit: "In the manufacture of the various acids and substances produced by the defendant in its said works, the said defendant uses, and has used since the year 1885, the most approved and best methods, appliances and processes known in the business, and each year expends large sums of money in experiments and investigations of new methods of manufacture for the purpose of obtaining a larger product of such acids and other substances, and to prevent the escape of the same into the air, and improvements are introduced from time to time when their practicability for such purposes is known. Theoretically there should be no substantal escape of gases into the air in the production of said acids and other substances as the manufacture thereof is now carried on by the defendant, or as it was carried on by it at the time this action was commenced."

We are unable to conceive for one moment wherein either the language used or the finding made, is erroneous. It is supported, I think, by all the authorities referred to in this case bearing upon that branch of the case, and upon that finding of fact, for instance, will it be contended that at the time the referee made this finding, or to-day while the court is passing upon it, if it should appear that the defendants themselves, by these improved methods and at great expense, or no expense, have adopted the same and prevented, by reason thereof, what was formerly a nuisance and what was injurious, that they now may not show the same and have the benefit thereof? Or, in other words, may they not show that they have discontinued on their own motion the nuisance complained of, if one ever existed? It can not be seriously contended but what they may do the very thing found by the referee in his report, to wit: "Avoid any annoyance or nuisance if any existed in their factory," on their own motion, by the use of the appliances and improvements referred to.

We think the authorities abundant and, indeed, no authority can be produced to the contrary but what it is not only the right, but the duty of the defendant to thus conduct itself, and any other course or method on its part would make it amenable to the equity powers of the court for the abatement of a nuisance, if one existed, by the continuance of the same when they could abate by the use of such modern appliances. I will have occasion to refer to this branch of the referee's report further on, in passing upon this report.

The fifth exception to the 9th finding of fact is, therefore, overruled.

The sixth exception is to the 9th finding of fact in said report, which is clothed in the following language: "If there is a high wind, these gases" (meaning the gases from defendant's works) "are carried into the upper strata of air, and do not reach said premises" (meaning plaintiffs' premises). This is excepted to, on the ground that there is no evidence supporting such finding, and that the same is not sustained by the evidence. We think there is sufficient evidence to sustain the finding, and it is so clearly a fact that the referee could properly, in viewing the premises, take it into consideration, even in the absence of evidence on that subject, and make the finding he did.

The exception is therefore overruled.

The seventh exception is to the 9th finding of fact, which finding of fact is in the following language: "The conditions are so indefinite that I am unable to determine definitely as to the quantity of gases so carried upon said premises, or as to the frequency or duration of visitation. My conclusion is that on the average such gases, or some of them, come to and upon said premises once in about two or three weeks in sufficient quantities to be noticeable, and that the length of time they are noticeable varies greatly, lasting sometimes a few minutes, and sometimes for several hours."

Counsel in taking this exception, seemed to forget that among other things they are asking the referee to measure and award damages in this case; and if that state of facts appeared to the referee from the testimony, as it did, it was more or less confusing. We see nothing improper in his making the finding in his report and so stating it.

This exception is therefore overruled.

The eighth exception is to the 10th finding of fact. It is in the following language: "There is some testimony tending to show that such gases extend at times to Humboldt and Hunter streets, and to that part of Broadway between those two streets, and I think that this was true to some extent while the now-abandoned copper smelting works were in operation; but I find that since then such gases do not come upon said last-mentioned territory so as to be either disagreeable, offensive or injurious."

The testimony clearly shows that at one time the defendants were operating what was known as "copper smelting works;" that is to say, they were extracting or getting in from ores or cinders the copper therein contained, and this process did generate very strong and obnoxious gases; but at a given time this was entirely abandoned and was not in operation at the time of the bringing of these suits; and, again, I see no objection to the referee embodying that fact in this report.

The exception is therefore overruled.

The ninth exception is to the 11th finding of fact, which is as follows: "The question as to the effect on the health or life of individuals, by the gases from defendant's works, which come upon the property described in the petition, has given me a great deal of difficulty, owing to the conflicting testimony upon that branch of the case."

It being one of the issues directly tendered by the plaintiffs, and being the very foundation of their prayer for injunction, we think, instead of being an error on the part of the referee to make the finding, it might have been assigned as error if he had omitted it.

The exception is therefore overruled.

The tenth exception is to the 11th finding of fact, which is substantially the same as the 9th exception, and the plaintiff excepts because such finding is not supported by any evidence in the case, and is not sustained by the evidence. If there is no evidence to sustain that finding, or to support the same, then the plaintiffs must have failed entirely in their cause or they (the plaintiffs) would necessarily offer evidence upon that subject. The weight to be given to it, or the conclusions to be drawn from such testimony, though offered by the plaintiffs alone, is a matter for the referee, and the plaintiffs' own testimony may have, in the opinion of the referee, supported the finding he made. But, in addition to that, I find testimony in the record from beginning to end, and I think very overwhelmingly sustaining the finding of the referee in this regard.

The exception is therefore overruled.

The eleventh exception is to the 13th finding of fact, which is as follows: "But there are other conditions existing in the vicinity of defendant's works, especially the amount of coal smoke in the air at times, which are also unfavorable to vegetable life, and it is not easy in any given case to separate the effect of one from the other. There is no vegetation of much value now in the territory affected by the gas escaping from the defendant's works, and there does not appear to have been any" (meaning vegetation) "of much value since prior to the time the works were first started, except an apple orchard which was formerly on a part of the defendants' premises, and which was removed some years ago."

This exception is overruled.

The twelfth exception is to the 14th finding of fact, which is as follows:" I am unable to arrive at a definite statement in regard to the injury to property thus occasioned, for such property differs in degree only from like injuries caused by the ordinary conditions in the city of Cleveland, especially in manufacturing districts. Owing to the general state of the atmosphere in this city, iron exposed to the air and not protected by paint or otherwise, will rust more quickly than in a normal atmosphere."

The exception, again, is upon the ground that it is immaterial and irrelevant, and that there is no evidence in the case supporting such finding; the ground of such exception is not tenable at all, for it is clearly germane to the issue here to ascertain, if possible, what injury or damage has been done from gases emitted by the works of the defendant company; if none, then the finding should be in accordance with that fact; and, if some, how much? And if injury exists and is caused or is the result of other and different causes, then clearly the defendant could not be charged therewith. We think the finding of the referee entirely consistent with the facts submitted to him in the case. Therefore the exception is overruled.

The thirteenth exception is to the 15th finding of fact, as follows: "Since the year 1885 the improvements which have been introduced in the methods and processes of manufacture have more than counterbalanced the increase in the capacity and product of the works, and since said time such gases do not escape so frequently as they did prior to 1885. The entire amount now escaping is at least no more than the amount which escaped in 1885 and prior thereto, and the atmosphere over the premises described in the petition is no more poluted and offensive, by reason thereof than it was prior to 1885."

True, this finding of fact, does have for its predicate a condition that existed prior to or in the year 1885. And what the referee meant, intended to, and did find, was that whilst the capacity of the works had been increased, yet such advancement had been made in improved methods that notwithstanding the enlarged plant, the improved methods still held in check and controlled the escape of gases therefrom.

We think the exception should be overruled

The fourteenth exception is to the 16th finding of fact, and the fifteenth exception is to the 18th finding of fact and both exceptions are overruled.

The sixteenth exception is to the 18th finding of fact. And the referee finds: "The occasional presence of said gases

in the atmosphere as hereinbefore found, has interfered with the comfortable enjoyment by said plaintiffs of the premises described in the petition. By reason of this and by reason of the effect of said gases on vegetation, the plaintiff has sustained some damage, and I find the amount of damage so sustained by him during the period of four years prior to the commencement of this action, to be the sum of $5.00.''

Two grounds are relied upon by counsel for plantiff for these exceptions: First, that the damage assessed is too small; second. that it is inconsistent with the other findings of fact in the case.

Now, as to the first ground, we think the exception must be overruled. The referee having found the amount from all the testimony and fixed it, it is not so clearly a violation of the section of the code that provides that a court shall not set aside a verdict or finding on account of the smallness thereof, as would authorize the court for one moment to interfere.

Second. that it is inconsistent with other findings in the case.

This, to my mind, has been a most serious question in the report of the referee, for the reason that the action is upon the theory that the defendants have been conducting. carrying on, and continuing a nuisance in the community or on property adjacent to the property of the plaintiffs, by reason of their factory and the products thereof. And it would seem, therefore, that if injury has followed by reason of the carrying on of said business and factory, that it must have been and did result from the gases emitted from the factory of the defendants, and if, again, injury followed, then it would be a nuisance, and the equity power of the court should be exercised and the nuisance abated.

It was contended by counsel in argument, that the finding of the referee was so inconsistent,—the finding and awarding damages and yet refusing an order to abate the cause of the damage—that of a nuisance—that the whole report of the referee should be set aside and confirmation refused; and we think this must follow unless there is such a state of facts in the record, and such reasoning in the case as will show that the findings are not inconsistent, and will sustain the referee's position taken in the same.

It is urged by counsel for defendant, that the findings for damages are clearly nominal, and therefore fall within a well-settled rule of law that nominal damages may be awarded and still an injunction refused, and the exercise of this high equity power declined. But it is contended by the plaintiffs, again, that the finding, not in this particular exception but in the other two, awarding damages, is not nominal. But whether that be true or not, as a matter of fact, that is nominal

or not nominal, it is perfectly clear to the mind of the court that each and every one of the judgments thus rendered can be sustained and is consistent with the remainder of the report, for the reason from the record in this case damages may have arisen, and a nuisance to some extent have existed, or did exist, so as to cause the damage to the property and for which judgments are rendered, and yet the refusal of an order to abate be entirely consistent with the finding, for the reason that since the occurring of the damages by reason of the nuisance thus conducted, the defendants have so improved their works, and taken advantage of all modern and improved methods to such an extent, that the court is clearly of the opinon that no. damage of any kind or character has been sustained by any of these parties complaining in this action, or at least mere nominal damages, within the last four years, and to-day, as the court viewed the premises and was shown all over them and through them, it was almost absolutely free from odor, let alone the injurious effects as contended for by plaintiffs in this action. And upon that theory as well as the theory insisted upon by counsel for defendant that the damages are merely nominal, we think the finding is entirely consistent on either theory of the law as suggested by the court, although I am frank to say that had I been passing upon the question from this record and from the testimony offered, I should not have allowed damages, at least to the extent that the referee has allowed them, and would now refuse to confirm the report in that regard if exceptions had been filed or taken to the finding of the referee in that respect by the defendant at the time, or if it was now insisted that the judgments rendered were erroneous, for I do not believe they are sustained by sufficient evidence in the cause; but there being no exceptions taken, and no contention now on the part of the defendant against the judgments, and the defendant being entirely willing, and indeed, asking to have the same confirmed, the court, under the code, can do but one thing, and that is to overrule the exception of the plaintiffs and permit the record in that respect to stand, and confirm the same.

The exception is therefore overruled.

This, however, disposes of all the exceptions of the plaintiffs as to the finding of fact as made by the referee in his report.

Possibly there are one or two other exceptions as to the findings of fact to which the court has not specifically adverted. If there are, the same are overruled.

This brings us to the consideration of the finding of law by the referee, to which exception is taken.

This conclusion of law is that ''the

plaintiff is not entitled to an injunction as prayed for in the petition, or for the order abating any nuisance alleged in said petition and said injunction and order of abatement should be refused."

It is perfectly apparent to the mind of the court, and must be to counsel, that if the referee's finding of fact is correct, and if the whole record in the case is correct, then clear it is that this conclusion of law must be and necessarily is, correct.

The second conclusion of law is also consistent with the finding of fact, to-wit: "The said plaintiff, Matthias Malchus, is entitled to recover a judgment against the said defendant, The Grasselli Chemical Company, for damages sustained by him, as hereinbefore found, in the sum of $5.00. The court has already passed upon the inconsistency, or seeming inconsistency, of the finding of fact as reported by the referee in this record.

We see no error in the conclusions of law as made by the referee in this case. We think there is no error in his holding that the remainder-men, or those holding the fee to the premises described, were not necessary parties to the action.

And now, in conclusion, we think from an examination of all the authorities referred to in this case, which are numerous, and the arguments of counsel on both sides, which arguments are very clear and exhaustive,—we think for the referee to have, or for the court now to undertake to issue a restraining order or an injunction against the defendant, or an order abating their works as a nuisance, would be a flagrant violation of the law in this case as applied to the facts from this record.

The Grasselli Company, as is well known and has been repeatedly stated, both in the findings of law and fact, by the referee as well as by the court in passing upon this motion to confirm, manufacture the gases referred to, which they are injurious to both animal and vegetable life when inhaled in great quantities or if set at freedom in great quantities in the air; yet from the examination of this record and the examination of the works themselves, the claim made by the plaintiffs in this case is not sustained by the facts or the testimony offered to support the same. An examination of The Grasselli Chemical Works, in connection with the testimony submitted to this referee, is as conclusive in the judgment of the court against the claim of the plaintiffs as it is possible for facts to be conclusive.

Every effort is made by the defendant to retain and keep within its control and possession all gases generated in its works. Not only is this true to avoid injury or make it liable for results thereof, but the escape of any and all gases in any quantity from its works is an absolute financial loss to it.

True, the theory of the plaintiffs' claim is good and has been ably sustained by counsel; but the facts offered by the plaintiffs absolutely fail to make good a claim of any kind or character against the defendant.

Go through the defendant's works. Men in the muriatic acid department, or in any of the departments, have been there in the employ of the defendant company from fifteen to thirty-one years; all of them are in perfect health, all their employes are in perfect health; vegetation is growing all around the works and surrounding the works. So as that all the theories of expert testimony, and all the theory of counsel, and the plaintiffs' claim must fall in the face of the true facts as existing in that locality. There are many hundreds of surrounding factories and businesses that are not half so free from nuisance and injurious results, in the judgment of the court, as the defendant's works. This is true because of their anxiety to retain the gases instead of permitting them to escape, for their own benefit as well as to avoid injury to their neighbors. Any other finding in this case would be to do violence both to the law and the facts, and the equity power of the court should not and will not be exercised against the defendant, and to do so in a great city like the city of Cleveland and especially in the Cuyahoga River valley, would be to do infinitely more harm both to manufacturing establishments and to those engaged in the manufacturing business, than the factory does to any person living adjacent thereto.

The courts refuse such relief, it resting in the sound discretion of the court. Where the legal right is not clear or the injury is doubtful or contingent, equity will give no aid.

The law does not regard every trifling injury or noise as an actionable nuisance. No man is under legal duty to consult the tastes or preferences of his neighbor in the use of his property, but he is bound to respect his neighbors' legal rights.

These plaintiffs, living as they do in a great city and seeing fit to locate where they have, must necessarily submit to annoyances which are incidental to city life, and, as in 78 Ky. Rept. "It must be recollected that manufacturing establishments are necessary and indispensable to the growth and prosperity to every city, and while the cleanliness and beauty of that part of the city, adorned by costly edifices, may be marred by a foundry or machine shop, and the comfort of life to some extent interfered with by the hum and noise, individuals' comforts must yield to public good."

And we are therefore, clearly of the opinion that the referee's report in this case from beginning to end is in accordance with the facts in the case, sustained

by the law, and consistent for the reason given by the court.

The exceptions are, therefore, all overruled, and the motion of defendant to confirm the report is granted. To all of which plaintiffs except.

J. A. Fogle, and J. O. Winship, for Plaintiffs

Squire, Sanders & Dempsey, for Defendant